Case No. 15-1067, The Tennis Channel, Inc. Petitioner v. Federal Communications Commission et al. Mr. Weiss-Weisser for the petitioner, Mr. Novak for the respondent, and Mr. Bond for the intervener. Mr. Weiss-Weisser. Good morning. May it please the Court, Your Honor. Good morning. My name is Stephen Weiss-Weisser. I'm counsel for the Tennis Channel in this case. I will reserve, if I can, three minutes for rebuttal from the 15 minutes of my allotted time. May it please the Court, this appeal is based upon one unavoidable proposition, that in this Court's prior decision in the Tennis Channel matter, it made a significant addition to the FCC's framework for deciding Section 616 cases. And Tennis Channel was necessarily and arbitrarily denied an opportunity to try to meet that test. Before that decision, if a Section 616 complainant established that a vertically integrated MVPD had discriminated against it in the terms and degree of its carriage, because it was competitively similar to programming networks that the MVPD owned and was in fact seeking to protect, then the complainant would win unless there was clear evidence that showed that the discrimination took place for independent business reasons. In this case, using that framework, the FCC decided in favor of Tennis Channel and found that Comcast's real purpose in carrying Tennis Channel far more narrowly than Golf Channel and Versus was to insulate those affiliated networks from its competition and that Comcast's claim of non-discriminatory reasons was not credible. This Court vacated that decision because it found an additional test that the record must meet. In effect, that Comcast was so satisfied with the programming benefits it was receiving as a result of its limited carriage of Tennis Channel that it was willing to forego benefits that its distribution business, cable business, would necessarily and otherwise obtain from Tennis Channel's broader carriage. I don't think that's what our Court would say. No, that's right. I don't think the prior panel of this Court would so characterize its holding. Well, Your Honor, it's a necessary reading of what the Court said was missing. Well, you said that the complainant originally charged that it was competitively similar unless there's an independent business reason for the decision. I think our Court said there was an independent business reason for the decision. I think what it said, Your Honor, it would be non-beneficial to Comcast. It would be non-beneficial to Comcast except that. In this case, I think what the Court might have said, and I think the Court did say, was that the distribution business of Comcast, once Comcast alleged simply that there was an additional cost, that none of the parties, FCC nor Tennis Channel, established whether there was or was not an independent benefit, additional benefit that would have been obtained for Comcast if it carried Tennis Channel more broadly. So that is the essence of the point, which is that we had failed somehow to meet the burden of establishing that there was an independent additional benefit that could have been obtained from carrying us more broadly. And it was that which we say was not part of the initial burden that we carried in this case or that the Commission thought was necessary, and it's why we didn't make that showing. That is to say that Comcast would have benefited from carrying us because we didn't anticipate that question was going to be in the case. We are not in a position, nor are we inclined to redo what our other panel has done, nor are we in a position to characterize the FCC's action differently from its own characterization. Both the prior panel and the Commission on Remand understood what the prior panel of our court did as not changing the law. We don't believe, of course, we accept the court's decision, the court's imposition of this test. It is, in fact, the law governing the case. We are only challenging not the court, but what the Commission did when faced with what we think is a clear allegation, a clear demonstration that the test had been changed. I mean, the Commission attempted post hoc to rationalize that there had been no change, but if you read its opinion with care, there's no place where the Commission addresses this question of whether there was benefit to Comcast, and to the extent that it addressed the evidence that Comcast had presented to justify the business decision that it made, the Commission found that that evidence was simply not credible. And on that basis, we believe not that the court found that there was adequate business justification. In addition, it found that there was no evidence that there was inadequate business justification. Mr. Weiswasser, I understand you to have a two-tiered position. One is that you want to be able to go back and argue that the existing record has the necessary evidence of net benefit. And where is that in the existing record? What would you rely on to show that, indeed, Comcast's cost-benefit analysis was wrong, and that, in fact, it would have net benefit? Well, Comcast's cost-benefit analysis was itself inadequate because it never dealt with the potential benefits. But if I were going to – and, indeed, we identified some of this for the Commission in the petition, and the Commission, of course, didn't address it, which is part of what we're – But my question is, what's the evidence in the record? I'll give you two examples, Your Honor. In the record is a report of the FCC's chief economist, which is paralleled with a report prepared by our economist, that demonstrated, among other things, that Comcast, when it was faced in particular markets with particular competition from other distributors, carried Tennis Channel more broadly than it did in markets where it perceived the competition to be normal or average. The inference to be drawn from that, Your Honor, is that Comcast saw that there are advantages to carrying Tennis Channel more broadly than it does in normal circumstances when faced with particular competition. In parallel to that, now, again, that information, that piece of evidence, which we think is at least suggestive of the proposition, was not mentioned by the Court, and it was not, in fact, in the Commission's briefs or in the decision, but it's in the record. You said you had two. Okay. The second one is one that was, in fact, before the Court, although it didn't mention it, and it was in the contentions that both parties made, and that is that as a general proposition, Comcast carried Tennis Channel at a lower level of penetration than other pure MVPDs, not burdened by the desire to protect their own business, their own programming services, than they did. So that, in effect, it was carrying it at a lower level. And you say that's evidence from which the Commission must have, you know, erred, was arbitrary and capricious in erring to find from those two pieces of evidence that there was a net benefit. No, we were suggesting what the Commission ought to have done on the basis of those two pieces of evidence, both of which established that there are objective reasons for Comcast's, that Comcast would have benefited from broader carriage of Tennis Channel, would have been to ask the parties to actually brief the question on the basis of the entire record and to consider the possibility of reopening the record for the limited purpose of evaluating additional evidence that might have been presented. And if you could, if the record were reopened and the FCC were to permit you to add evidence to it, as you've requested, what evidence would you add? Well, Your Honor, what we probably would have done, I think we almost certainly would do, is to obtain some additional expert testimony with respect to the impact of broader carriage on Comcast's distribution business. We would have brought in evidence of all kinds with respect to potential increased ad revenues. We would have brought in evidence with respect to potential audience interest in the content. In fact, I know what we would have done, because in a companion case, which is still pending in the D.C. Circuit, excuse me, at the Commission, where we represent the independent program or Game Show Network, the administrative law judge in that case, looking at exactly the same facts that the Commission did when it decided that the court had not changed anything, the administrative law judge looked at the same facts and said, I have to reopen the record here and provide the parties an opportunity to respond to and provide evidence with respect to the test, the new test that the court has established. On your Comcast, in our prior decision? Pardon? In our prior decision. Yes, your prior decision. And what's the case that you're referring to there? It is Game Show Network, your Honor, Game Show Network versus Cablevision. And that case is not a matter of record before you. It's not in this record. If you would like, we would be happy to supplement it by providing you citations to the place where the administrative law judge specifically noted that the Comcast decision in this court had changed the evidentiary nature of the positions the parties needed to take. So could I just ask, based on what you said this court had done in changing, when Comcast offered before the FCC the information that its decision not to distribute Tennis Channel more broadly was based on a simple business decision, that these additional fees it would have to pay didn't make it worthwhile, why wouldn't that have been the occasion for you to have come back with this evidence that you're referring to now in your discussion with Judge Pillard? Your Honor, at that point, we responded with respect to what we thought was the reigning standard in the case, which was that Comcast was making an enormous amount of money from the fact of discrimination because it was being shielded from competition in two of its most important owned networks by keeping us weak and small. But you're assuming the conclusion by saying that the reason they were getting this money is it was shielding their vertically integrated sports networks from competition, but you have to come back and show, no actually, if you're treating us equally, you would benefit. Well, in fact, that's what we showed. On the one hand, what we showed was the reason why we were not being treated equally was because Comcast was profiting from not doing so. The thing that the court changed, the test that the court added, which we did not realize was part of our burden, and which, I must say, judging from the commission's brief decision and briefing before the court before it decided it, what the commission didn't understand was we also had to prove that not only was the Comcast benefiting from keeping us small and weak, it was foregoing an opportunity to make additional revenue on the distribution side by doing that. Judge Rogers, it seems to me that stopping at the point of saying that relieving a party from being discriminated against would cost money and that that is a sufficient business justification not to do it would not, in most discrimination cases, really work, and it shouldn't work here either. Again, Comcast was benefiting enormously financially from the failure to comply with the statutory requirement that similarly situated networks needed to be treated similarly. So is it your position, then, that the distribution side of things was simply not a matter at issue before the commission? It was not a matter of issue at that time in this way. We accept the fact that the D.C. Circuit and the first panel... No, I'm talking about before the panel's decision. That is correct, that the cost, the impact on the distribution business itself was outside of what was necessary to prove in a case of discrimination. And what's your strongest case supporting that position? Well, I think we're the strongest case, at least we were. This was a case where the commission wholeheartedly found discrimination, found benefit to Comcast, and never mentioned the distribution business. No, I understand you won, but was the commission relying on a long line of precedent in interpreting Section 6? We were the first case where the commission had found that a program service had been discriminated against. It's one of the reasons why the case is so important, and candidly, it's one of the reasons why it is, we think, surprising that the commission, rather than taking the opportunity to buttress its decision in a fashion that could be done with not much difficulty, we thought, that it didn't take it. What about Comcast's argument that we have no jurisdiction to review the FCC's decision not to consider the record further and or reopen the record? Judge Blard, we think that clearly this is not a case that falls within the category that the law you're describing is intended to apply. We are not looking around for a way to create an opportunity for judicial review that we wouldn't otherwise get. There were changed circumstances in this case, which was that in the intervening decision of the D.C. Circuit that created a test that nobody had an opportunity. So you just pointed to two things. One, that you had filed your request for further deliberation before the commission on the record and or supplementation on the record before your time for appeal expired, and then your separate one was changed circumstances. If you take away changed circumstances, is your position still that there's no jurisdictional bar? No changed circumstances. We do not believe there's a jurisdictional bar. Even without changed circumstances? Even without changed circumstances. What's your strongest basis for that? Well, in the law, we think that the term changed circumstances so aptly applies here, Your Honor, that I can see that this is not a case that ought to be barred and is intended to be barred by the policy behind the law. If we accept what appears to be the view of the prior panel and of the commission, that the circumstances did not change, this was the law all along, maybe the commission the first time around didn't recognize all of the groups that had to jump through. If we accept that, and then I repose the question, what's your best authority for it nonetheless not being beyond our jurisdiction to sort of consider the FCC's decision not to reopen? Well, with respect, we find the notion of changed circumstance here compelling with respect to the question of jurisdiction. Right, and you're playing my hypothetical and or description of the situation. And we think that we're comfortable relying on that changed circumstance. If there's no changed circumstance, Your Honor, that is to say, if we're wrong on the question of whether or not the court changed the test, and again, we do not object to that change. We are prepared to live with it and only ask that the commission do so as well now. I think we have a bigger problem than just having the court's jurisdiction issue resolved. All right, let us hear from counsel for respondents. Good morning, Your Honors, and may it please the court. If I may, I'd like to begin by explaining what we understand the court to have held in the first Tennis Channel case. Because I think the court has surmised we don't agree with Tennis Channel's view that the court somehow adopted new evidentiary tests to govern this or any other case. What about the notion that this is the first time the FCC has ruled in this area? I just want to be clear what your position is on that. So I don't think that's quite accurate on the premise. It's not the first time we've ruled in this area. We've had other program carriage disputes. I think the court can see we discussed the Masson case at length on both sides in the briefing here. So we previously set forth in rulemakings as well as prior adjudications what the legal standard is and the framework we're using to adjudicate program carriage disputes. So if I go back and read your brief in the first appeal, I will see all of this set out. I think so, Your Honor. I think that I want to draw a distinction here between the overarching legal framework that governs these kinds of disputes and the separate question of whether the particular evidence here was sufficient to satisfy the burdens under that framework. Because I think the court agreed with us or at least accepted, assumed the correctness of our legal framework for adjudicating these disputes and simply disagreed on the sufficiency of the evidence here. So in fact, I think if you take a look at the prior panel opinion, toward the start of the opinion, one of the first things it does is to say that it is applying and assuming the correctness of our longstanding evidentiary framework for adjudicating program carriage complaints. So the first thing the court did was to adopt our evidentiary framework. And then the second thing the court did was to identify the particular defense that Comcast raised here, and that was its claim that it couldn't have been discriminating because its decision was simply a straightforward financial analysis. And then the third thing the court did, and I think this is important, was to offer a common-sense explanation of what a party in Tennis Channel's position presumably should have done to rebut that particular defense, either by showing the financial calculus actually runs the other way or by showing that it couldn't have been the actual basis for Comcast's decision and instead was mere pretext. And then the fourth thing that the court did was to look at the record here, and it found, quote, the record lacks affirmative evidence along these lines. So as we understand it, nothing in the court's decision here prescribed any new or different legal test to govern this dispute. We think the court simply found within our established legal framework that Tennis Channel had failed to make the required factual showing to rebut the particular defense that Comcast offered here. Yes, Mr. Novak, but fact and law really dovetail. I mean, in a sense, any time a court, an appellate court, says, oh, this type of evidentiary showing doesn't suffice to show discrimination, there is, that's a new legal conclusion on what the, you know, how many hoops you have to jump through. And there's a lot of intuitive appeal to what the commission did the first time around, say they were benefiting a lot from these shielded, their own proprietary networks being shielded. And we think that's why they, you know, every sports network that they own, they treated one way. And every sports network that they didn't own, they treated another way. And, you know, and they were benefiting from that. So that's one test. And even though you're under the same umbrella to say, no, no, you actually have to go further and show you're foregoing some opportunity that would come from the incremental better treatment of the competitors, maybe that is a different legal test. So I think there are two questions embedded there. So one issue here is that I think the way that the panel viewed this, and I don't think we're at liberty to question that, is that the evidence it was asking for was the natural consequence of the particular defense that Comcast had proffered here. When Comcast said that the reason, our non-discriminatory reason for not carrying Tennis Channel was a cost-benefit analysis, it naturally should have occurred to Tennis Channel and anyone else to present cost-benefit evidence. So could I just clarify? Because I see where this Court said Tennis Channel offered no evidence that its rejected proposal would have afforded Comcast any benefit, any being italicized. Does that mean, in other words, that benefit on the distribution side was clearly a matter that was within the FCC's understanding of the meaning of 616 and therefore a matter that should have been factually addressed before the Commission? I think it is. I think if you take a look at the Masson case, what we said in Masson, that was a similar situation where in that case the distributor had said the reason we didn't carry this regional sports network was that we found there was insufficient demand for it here to justify the cost of carriage. And in that case, we looked at the facts and we found that they were correct on that basis. We agreed with them. But I think it was evident to everyone that in order to rebut a defense of a… Excuse me. When you say we, who are you talking about? Comcast? The Commission. All right. So the Commission in Masson agreed with that argument? Yes. That you have to look at Comcast's entire business operation in order to determine whether or not there is any benefit? Well, I think that any part of the business would be relevant to the cost-benefit calculation. So my question is, if indeed there was this economic report in the record before the Commission where that inference against you could be found, why… It's a hard question to ask, but did this court simply decide sub salientio, that that wouldn't have made any difference? I think so. I don't think it was sub salientio, so maybe if I can discuss where I think the court disagreed with us in the prior case. I think the court disagreed with us on two issues, and we're not here today to quibble with the prior decision. I think that the time for that has passed, and we've accepted that decision. So I think the first area where we saw the evidence differently was that we looked at the facts here, and we found that the cost of carrying Tennis Channel would have been less per ratings point than the cost of carrying Golf Channel vs. So we thought that Tennis Channel would have been a better deal, and yet Comcast favored its affiliates. But the court took issue with that analysis because it found there was no evidence in the record to show that ratings points correspond to revenues to benefits for Comcast. So it is true that for an MVPD like Comcast, revenues generally come not from advertising, which would clearly be bound up with ratings, but from the subscriptions and subscription revenues. And it's extremely difficult to determine how much any individual channel in a cable package in isolation is driving subscriptions and subscriber churn. So what the court simply said was that there wasn't evidence substantiating that link. And let me say, until just a few moments ago, Tennis Channel had never told us what additional evidence it believes it would be able to present if the record were reopened. And I think now they're talking about expert reports with some of this information. But if you take a look at the briefs that Tennis Channel has filed before this court in this case, you look at page 45 of Tennis Channel's opening brief and page 17 of its reply brief, I think you'll find that Tennis Channel is saying it's impossible to know how much any given channel, or at least our channel, is driving subscriber interest and driving subscription revenues. And I think they're essentially admitting they can't and don't intend to make that showing. But then doesn't that make, I mean, isn't the commission concerned about that, that this is an unprovable, unmeasurable burden? So the court said that in an appropriate case, expert evidence might do the trick. And we think that there are cases where that could be done. But Tennis Channel is the one, I think, effectively conceding that they can't do that here. But, no, I think that in the future it would certainly be possible for the parties or the commission to introduce evidence of this link. Can you speak to the jurisdictional question? I really think it's important for the FCC to be clear on record of what your position is about whether we have jurisdiction. Sure. So we haven't joined Comcast in that argument. I think that the standard which comes from the Supreme Court's case in Brotherhood of Locomotive Engineers is that a request to reopen is unreviewable unless it's based on changed circumstances or new evidence. And we take a look. Even in this procedural posture, we're talking about on remand and where the request is filed within the time for petitioning. Well, so that may be another exception to treating this as jurisdictional. We don't think it's a jurisdictional issue. We do think that ultimately this is a discretionary decision for the commission. But I think that the request that Tennis Channel filed with us at least alleged changed circumstances from the court's previous decision. I think that might be the right way to weigh the import of that previous decision. And it also asked to submit new evidence. So we don't think that on either of those showings what it did was sufficient for us to, in our discretion, decide to reopen the record. But I think that's the merits question. We just don't view that as a separate jurisdictional issue. That said, we'd be happy to win the issue either way. So you're saying because the basis of their further proceeding for their request was changed circumstances, new evidence, you're saying that's enough to obviate the potential jurisdictional? Yes, Your Honor, because otherwise you run into a difficult line-drawing issue here about how much is enough. And how much is enough, I think, is really a question about when we should choose to exercise our discretion to reopen the record. At that point, I think the jurisdictional question and the merits question essentially look like the same question. So we don't think there's anything that precludes the court from reviewing that. I do think that it was eminently reasonable and certainly not an abuse of discretion for us to decline to reopen the record here. Not only because Tennis Channel didn't tell us what additional evidence they wanted to present, but they also haven't explained why they couldn't have done that earlier. Because they already had a full and fair opportunity to present any evidence in the initial proceedings before the administrative law judge, which were extensive. And we don't think that a party in Tennis Channel's position can choose to present only some evidence, seek a ruling on that partial record, in this case have that ruling go up to this court on appeal, and still reserve the right to present additional evidence only in the event that its initial showing is deemed insufficient. Well, what about what you quoted from its, that is, Tennis Channel's opening brief to this court, that it was impossible to prove? So I think that, well, that concession has now come late after the fact. But I think that was relevant to us in the sense that Tennis Channel never told us what else they think they can do. No, I understand that, but I thought you told me that in Tennis Channel's opening brief to this court in the first appeal, it had taken the position that it was impossible to prove. Oh, I'm sorry. I meant Tennis Channel's briefs in this appeal currently, not the previous appeal. I think if you take a look at the briefs in this appeal, that's where they're saying it's impossible to, at least in their view, for their particular situation, substantiate that link. We don't take the view that it's generally impossible to do, but I think they're conceding they can't do it here. Have these, just going back to the question of whether the laws change or not, has a 616 intentional discrimination case ever turned on net benefit, the kind of inquiry that Comcast 1 adopted? Can you point us to where that is an existing standard? So we've been using different terminology than Tennis Channel did, and maybe you might say slightly different terminology than the court's previous decision. But the right way, I think, to look at it here is that when Comcast offered the defense that it was just making a cost-benefit decision, the inevitable implication of that particular defense is that you should respond with cost-benefit information. Cases? Prior cases that would illustrate that? I think that all we have to point the court to is Masson, which I think makes clear that cost-benefit information is often essential to proving program carriage complaints. And I would point the court again to the prior panel statement that the value of this sort of evidence should have been, quote, rather obvious. So at least in the prior panel's view, it wasn't cutting any new ground here. And let me also say that we don't see anything in the previous panel decision which indicates that panel believed the FCC would need to conduct any further proceedings on remand. In fact, I think Tennis Channel read the decision to foreclose further proceedings on remand as we did. We filed a petition for rehearing, asking the panel to modify its decision to direct the FCC to conduct further proceedings, and the panel declined to do so. So I think the panel's understanding was in line with what we felt on remand. And I'll add that it'd be particularly odd here to require further proceedings on remand, given that two members of that panel, a majority of the panel, made clear in separate concurrences that they believed Tennis Channel's complaint needed to be denied outright. And it wouldn't make a great deal of sense to require further costly and time-consuming proceedings on remand if those could be rendered moot by other entirely dispositive issues. So we think under all the circumstances here, if the prior panel had meant to require us to conduct further proceedings on remand, and that is Tennis Channel's position now, that we are required to do something more on remand, we think the court would have said so expressly. And that's what the court has done in a number of other FCC cases where it's directed us to conduct further proceedings on remand, but it conspicuously didn't do so here. And ultimately, we were trying to here just to apply our best understanding of what the court was asking us to do. But you would agree the prior panel basically had three different approaches, and the two concurring opinions resolved the matter without any need for remand. The two concurring opinions resolved it without need for remand, yes. So on timeliness and on constitutional, so it's just the concurrence reading the single opinion to understand what it meant when it said petition granted. Yes. So I want to be clear on how we are saying to use those concurrences. I don't think you need to take those two concurrences and piece them together to get a different judgment, although we think you could. No, I understand. What's that? I understand. But I'm just saying that you say the concurrences didn't suggest there should be a remand. Well, their disposition of the case, there would be no occasion for a remand. There would be no occasion for a remand. And I think that illuminates the panel opinion, which all the judges joined, because I don't think they would have joined that opinion had they anticipated that it required further proceedings here. Or at least the panel would have said that it was deferring these issues until later or reserving them. But that's not what it said. What it said is it found no need to reach those issues. But sometimes that's the best we do. We decide what we decide, and we leave the rest perhaps to the commission on remand. And you've chosen not to take this up. But I guess we're not presented with a question of whether you could read that to permit the commission to take it up had it wanted to. I think that's right, Your Honor. So what I thought was interesting was one of the concurring opinions says, you know, I concur in the cogent opinion for the court. It is clear from the record that even accepting the FCC's interpretation of 616, there is no substantial evidence of unlawful discrimination. And the even accepting suggested to me that, well, there was some difference here between the single opinion and what the FCC had said. We didn't read it that way. I think that's just gesturing back at what happens on the second page of the panel's principal opinion, where it explains that it's assuming the correctness of our approach for purposes of this case. So I don't think that was meant to ‑‑ A rhetorical flourish. I think it was just a rhetorical flourish to indicate in a colorful way complete agreement and alignment with the principal opinion. So if that principal opinion and the concurrences are all on the same page and the concurrences are as clear as can be that there can be no further proceedings, it seems to me that is cogent evidence that the panel opinion is best understood here not to have ‑‑ certainly not to require further proceedings on remand. So I would be happy to entertain any further questions from the court. But if there are no further questions, then we ask ‑‑ I just have one question. Yes. The commission said we're going to deny the request for reopening. We want to bring this matter to a close. What does that mean? So, Your Honor ‑‑ In turn, I'm thinking of commission cases that have gone on for decades. So this is now on this discretionary issue about whether we should reopen the record. That's where we're speaking to this. Which we do think is a decision committed to the agency's sound discretion. And that's what all of the precedent holds. But I'm just saying the reason it gave. So it was balancing, I think, whatever interest Tennis Channel claims to have in a second opportunity to prosecute its complaint. And we don't think it has any significant interest and certainly not any entitlement here, given that it already had a full and fair opportunity to present its case earlier. We do think that on the other side of the ledger, the agency has a significant interest, like in any court case, in finality, in certainty, and repose. And I'll say I think that's heightened here in the program carriage context. Because Congress has specifically directed us by statute to resolve these disputes on an expedited basis. And this case has now been pending before the commission for more than six years. So we don't think it would be a well-warranted use of the agency's resources here to give Tennis Channel a second bite at the apple. So this discretionary decision ultimately was just a balancing of what, how strong an interest do we think Tennis Channel's articulated here in having a second opportunity to present its case and the countervailing interest that we have in being able eventually to bring these proceedings to a close. So I think that's where that factors into our analysis. Thank you. Thank you, Your Honor. All right, counsel for intervener. Thank you, Your Honor, and good morning. And may it please the court. Jonathan Bond for Intervener Comcast. Tennis Channel's case rests squarely on two premises that are directly refuted by this court's prior ruling. And its position would mean that many adjudicative proceedings before agencies could never end. Now, the first premise, what it calls today the single unavoidable proposition, a necessary premise to all of its arguments is that this court's prior decision established new tests. But this court's opinion is clear on its face, and the commission has repeatedly acknowledged in its order here and in its brief on appeal and at argument that the prior panel decision did not establish any new tests. What Tennis Channel cites as supposedly new evidentiary tests are simply what this court called obvious examples of evidence Tennis Channel should have put forward if it existed. Now, that ground has been covered already this morning, so I'd like to focus instead on why Tennis Channel's claim fails in any event because its second premise is also mistaken. As Tennis Channel admitted at the time in its rehearing petition at page 11, this court did not send anything back to the FCC for further consideration, but conclusively decided the merits as a matter of law. Having failed in what this court called obvious ways, Tennis Channel should not get the windfall of a do-over before the agency. Now, we know that Tennis Channel's concession was correct for at least three reasons. First, the panel's opinion says explicitly that the commission could not lawfully find discrimination. That's at page 984. That we read as a determination that is a matter of law. Tennis Channel's claim fails, just like a court ruling on a Rule 50 motion. There is no way a reasonable fact finder could reach the necessary conclusion based on this evidence, and that conclusion is backed up by at least six specific statements, which we catalog at page 19 of our brief, where the court says there is no evidence or the record lacks evidence because Tennis Channel never offered that evidence. The record is simply devoid of it. So that conclusion completely disposed of the issue. Second, as the commission has already discussed, the concurring opinions provide powerful confirmation of that reading because it is simply implausible that the concurring judges, who believe Tennis Channel's claim was completely foreclosed as a matter of law, would have joined an opinion that let that very claim go forward. They would not have agreed to send the case back to the commission to spin its wheels without the panel even addressing these threshold issues. And that's the only reason the panel gave for not addressing these three independently dispositive issues. The panel would at least have confronted those, and the reason it didn't was because the evidence was dispositive. That ground was completely conclusive of the case. And finally, the absence of a mention regarding the remand in the opinion or mandate actually cuts our way, contrary to Tennis Channel's argument, because when this court intends to remand, it says so. The court has no questions. Thank you. Counsel for petitioner. May it please the court, I'd like to just deal with three or four of the points that were made by counsel. This is not a second bite at the apple. If this were a second bite at the apple, something in the commission's decision before the panel got to it would have suggested that the commission understood the test to be what it now says was the test. There is no evidence anywhere in any of the commission's decisions in this case, any other case, that suggested that the so-called foregone benefit test is itself a part of law. We think it is. We now understand that. The Masson case, which the commission relies on, doesn't get it there. Masson was a case in which a program service providing Washington and Baltimore television sports wanted to provide it to North Carolina, a cable system which had other sports programming and sought relief under 616. The commission correctly held that the cost and the rather small audience for Washington programming in North Carolina justified a fairly cursory conclusion that there was no business justification for the cable company in that case to carry it. We note here that no matter how this case gets sliced, at the end of it, the court had before it a case in which the commission standard, as the commission interpreted it in its own order, was not satisfactory to the court and contained evidence within it, and that the commission did not provide evidence that satisfied the test that the court raised. Under those circumstances, Your Honor, this case is a case for remand. And if it's a case for remand, under the ordinary remand rule, it is a case very much like the case of BIA v. Ventura, which we cited in our brief, where the court effectively decided that there was a new standard, said there was no evidence, as Comcast and FCC would have it, no evidence in the record that supported the test and that there would be no reason for a remand because the case would be decided in the same way. We think that when the Supreme Court reversed that on the ground, that it was entrenching deeply into the discretion, the expertise, and the authority of the administrative agency and summarily reversed the court. It was saying what we think is applicable here. There, though, it was the court that usurped the agency's proper role. Here, it was the agency abdicating the proper role that it should have fulfilled, which is to take the case back, look at the evidence we showed, ask the parties to comment on it, and then decide whether or not it would open the record for further evidence because it was very suggestive that the new test could be met even more specifically, or dismiss us on the ground that the new test was not meetable or not met. It did none of those things. It retired behind, among other things, the cases have to come to an end rubric, which, as Judge Rogers has pointed out, is rather indifferently and erratically applied by this agency. The delay in the resolution of this case is certainly not the fault of Penischannel as the litigant in the case. We've gotten our papers on file. We did our hearing expeditiously, and this is the normal course of operation of a very complicated and difficult jurisprudence. And I suspect that the commission would not in other cases simply give us the back of its discretionary hand simply on the ground that the case had taken a long time. All right. Thank you. We'll take the case under advisement.
judges: Rogers, Brown, Pillard